IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


**NATASHA POWELL, o/b/o**
**L. P.,**

    Plaintiff,

vs.                                    CASE NO. 5:06CV128-RS/AK

**MICHAEL J. ASTRUE,**[1]
**Commissioner of Social Security**

    Defendant.

_____/


## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications on behalf of her son, L. P., for supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

A.   **PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on behalf of her son on October 26, 2001, alleging a disability onset date of August 20, 1999, because of emotional, behavioral and intellectual handicaps.  Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on June 21, 2005, and entered an unfavorable decision on January 10, 2006.  The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner.  This action followed.

B.   **FINDINGS OF THE ALJ**

The ALJ found that the child suffered from ADHD, which was severe within the meaning of the Act, but that the evidence of record supported a finding that this impairment was in remission when the child took his medication as prescribed and received regular counseling.  The ALJ has given considerable weight to the consultative examiner, Dr. Annis, as well as the state agency examiners, who found that no marked limitations were present and the child did not meet the listing requirements.  Specifically, the ALJ found that the child did not have an extreme limitation in any domain of functioning nor did he have two marked limitations.

C.   **ISSUES PRESENTED**

Plaintiff argues that the ALJ erred in finding that Plaintiff was non-compliant in his treatment since poverty excuses non-compliance; that the ALJ erred in disregarding the

**No. 5:06CV128-RS/AK**

opinions of Plaintiff's treating sources without explanation; that the ALJ erred in not obtaining an intelligence test, as requested by counsel. (Exhibit A).

The government responds that the ALJ did accept the opinions of Plaintiff's treating sources and specifically found that he suffered from a severe impairment of ADHD; however, the ALJ properly discredited the opinion of Plaintiff's mother and gave reasons for this finding. The ALJ also did not deny benefits for non-compliance, he found non-compliance as a ground for assessing the credibility of the severity of Plaintiff's impairments, among other factors. Consequently, there was substantial evidence to support the ALJ's findings that Plaintiff was not markedly limited in the various domains and was not disabled.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**D.     STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

**No. 5:06CV128-RS/AK**

Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal.  Id. (citations omitted).

> Childhood disability is defined by the regulations:
>
> An individual under the age of eighteen (18) shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death, or which have lasted, or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §1382c(a)(3)(C)(1).
>
> The regulations set forth a three-step sequential evaluation process:

**No. 5:06CV128-RS/AK**

1. The ALJ must determine if the child is performing substantial gainful activity;
2. If not, the ALJ must determine whether the child's impairments are severe; and
3. If severe, the ALJ must determine whether the impairments meet or equal the severity of a listed impairment.  20 CFR §416.924.

If the ALJ finds that the impairments are severe, but do not meet the listing requirements, he may find that the impairments result in limitations that functionally equal the listings.  20 CFR § 416.926a.  To establish functional equivalence in step 3, the ALJ must have a medically determinable impairment that results in marked limitations in two functional domains or an extreme limitation in one domain.  20 CFR § 416.926a(a).  The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating to others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 CFR 416.926a.

E.     **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Dr. Annis' report dated October 27, 2005, found the child to have ADHD, in remission, with possible below average intelligence, which he suggested be evaluated. (R. 27-29).  Dr. Annis found the child to have "[n]o decline in attention" during the meeting, and to have good memory recall, orientation, a happy mood, and appropriate attire, grooming and hygiene.  Plaintiff stated that the child refused his medication frequently, in fact "all last week," although the child said the medication helped him stay focused but "like a zombie."  (R. 27).  Plaintiff stated that the child was very disrespectful to her and his grandmother, was angry and cursed, talked back, hollered.

**No. 5:06CV128-RS/AK**

However, the child described his relationship with his mother as, "She treats me real good. She's there when I need her. She helps me with my behavior. She's a good mother." He also stated that he and his mother are "okay" without his father in their lives. (R. 28). They have each other. (R. 28). Dr. Annis checked none or less than marked to all six domains of functioning. (R. 31).

The child is prescribed Adderall, two pills in the morning, and Clonidine, two pills at bed time. (R. 120).

School records indicate that Plaintiff was classified as emotionally handicapped and was over two years below grade level in 2001. (R. 122-126). In an evaluation dated September 27, 2001, the child was noted not to be taking medication and having multiple problems with attention and behavior. (R. 171-173). By 2002, the same teacher noted that he now performed two years above other students in the class, although behind unimpaired students of the same age, and that he was normally respectful and cooperative if he had taken his medication. (R. 128-129). No problems with social interaction, staying on task or temper were noted if he took his medication, but that he did not take his medication every day and he "would be capable of functioning in a less restrictive environment if he took his medication daily." (R. 131). His work was inconsistent (R. 136), and he had problems with anger, except when he took his medication. (R. 137, 158-160).

Daily Behavior Reports in 2004 show several instances of talking back and acting out, which the teacher found to be related to his lack of medication. (R. 266-277). She

**No. 5:06CV128-RS/AK**

sent the notes home asking his mother to please give him his medication. His extensive school records indicate an uneven behavioral history and inconsistent academic progress. (R. 257-602).

A report from school psychologist, Gwen Anderson, dated September 27, 2001, notes a number of difficulties with the child's behavior "especially when parents do not provide medication at school." (R. 603). Intelligence tests taken at that time rendered a Full Scale IQ score of 87. (R. 604).

Notes from Life Management Center show that Plaintiff brought the child in for review in June 1999 because of behavioral problems at school and apparent hyperactivity. (R. 669-675). He was started on medication for ADHD. (R. 667). Although reports of his behavior at school were often uneven, he usually exhibited no hyperactivity during his examinations and all other observations were within normal limits. (R. 606-616, 625-630, 637-675). The records show that the last treatment note on July 14, 2004, indicated that the child was calm and focused and "may not need meds this year." (R. 637).

Dr. Kim Skinner, a counselor with Life Management had counseling sessions with the child on November 6, 2002, December 4, 2002, December 23, 2002, January 15, 2003, January 29, 2003, February 12, 2003, April 28, 2003, November 12, 2003, May 5, 2004, and June 16, 2004. (R. 638-648)

Childhood Disability Evaluation Form dated May 19, 2002, found his impairment to be severe, but not disabling. (R. 619-624). The state agency psychologist, Dr. T.

**No. 5:06CV128-RS/AK**

Wayne Conger, noted that the child continued to "demonstrate deficits in academic skill areas in spite of average intellectual abilities," but that this was a "less than marked" limitation. (R. 621). It was also noted that he responded well to medication and his behavioral problems improved when he took his medication. (R. 621). There were no limitations noted in the areas of personal care, health and physical well being, and moving about and manipulating objects. (R. 623).

Another CDE form dated October 18, 2002, prepared by state agency psychologist, Dr. J. Patrick Peterson, also finds the child's condition severe, but not disabling, noting that he had less than marked limitations in the areas of acquiring and using information and attending and completing tasks because "he continues to perform adequately in a normal range of age-appropriate learning activities" and "has proven to be a very positive responder to proper meds...." (R. 631-636).

### F.  SUMMARY OF THE ADMINISTRATIVE HEARING

Plaintiff testified that her son continues to be treated at Life Management Center and receives medication from Dr. Sanchez. (R. 709). He performs at a fourth or fifth grade level in the seventh grade and received A's and B's on his last report card "with the medication." (R. 710). He has been suspended "probably about twice" for leaving his classroom and talking back to his teacher. (R. 711-713). There have been several fighting incidents, but he has not been suspended for this. (R. 714-716). His mother says the medication helps, but wears off later in the day and the behavioral problems start up again. (R. 716). The child has been in special classes since kindergarten and

makes "pretty good grades." (R. 719). He does not do chores as he is told to do and has been taking his mother's car for joy riding. (R. 721). He fights with his siblings, including physical fights with his 12 year old sister and five year old brother resulting in bruising. (R. 723). He has been on Adderall for 10 years and although she says the medication wears off she has not talked to either Dr. Skinner at Life Management or Dr. Sanchez who prescribes the medication about increasing it because she says he's already on 40 milligrams and extended relief and it does not wear off at school. (R. 729-730). Life Management closed in Marianna, so Plaintiff no longer takes the child to a psychiatrist. (R. 731). However, Dr. Skinner was a counselor there and his notes can be found in the record at Exhibit 7F. (R. 735). The last visit with a psychiatrist was October 2001. (R. 236). The child was in an after school program to help him with his homework, but he got kicked out for pulling a girl's pants down on a dare. (R. 742).

**G.     DISCUSSION**

    a)     Listing 112.11 Attention Deficit Hyperactivity Disorder

Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

    A. Medically documented findings of all three of the following:

    1. Marked inattention; and

    2. Marked impulsiveness; and

**No. 5:06CV128-RS/AK**

      3.  Marked hyperactivity.

AND

      B. ...for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

      The "B" criteria in 112.02 are: marked limitations in age-appropriate cognitive/communicative functioning; marked limitations in social functioning; marked limitations in personal functioning; and marked difficulties in concentration, persistence and pace.

      The ALJ found no marked limitations in any of the areas.  As for cognitive and communicative functioning he relied upon the IQ tests which showed a verbal IQ score of 91 and the school records which show that the child had not failed any grades and was achieving at least a B average on his report cards.  (R. 16).  Standardized tests and school records are "acceptable sources" of documentation for such assessments.  <u>See</u> Listing 112.00D.  The ALJ also found that social functioning was not markedly limited because school records and the notes of Dr. Skinner, the child's therapist, indicate that he participates in sports and gets along with others when he is on his medication.  (R. 16).  School records also support that he is respectful and gets along well with others when he has taken his medication.  (R. 16).  These records also support no marked limitation in personal functioning, which would be reflected by an inability to care for personal needs, health and safety without assistance.  (R. 16).

**No. 5:06CV128-RS/AK**

The ALJ also assessed the child under the domain analysis and found no marked or extreme limitation in any of the six domains. (R. 17-23). He relied upon the report of Dr. Annis, to whom he attached "significant weight." (R. 17). The ALJ also referred extensively to the school records, notes from the child's counseling sessions at Life Management Center, as well as to significant portions of the mother's testimony, for support of his findings. (R. 17-23). While Plaintiff takes issue with the ALJ's assessment of her credibility, the ALJ explained that he rejected only the mother's assertion that the child was disabled. (R. 23). Otherwise, he found considerable support from the mother as to the child being "very functional." (R. 23). These findings were supported by specific reference to school records, therapy records, and the examination by Dr. Annis. Thus, the ALJ's decision is supported by such relevant evidence as a reasonable mind might accept as adequate to support his conclusion that the child is not disabled.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this  **5th** day of September, 2007.

        *s/ A. KORNBLUM*
        **ALLAN KORNBLUM**
        **UNITED STATES MAGISTRATE JUDGE**

**No. 5:06CV128-RS/AK**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 5:06CV128-RS/AK**